UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLINTON M. DESROCHE                          CIVIL ACTION

VERSUS                                       NO. 07-1372

RODNEY STRAIN ET AL.                         SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Clinton M. Desroche, is a prisoner currently incarcerated in the River Parish Correction Center in Ferriday, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Rodney Strain, Warden Marlin Peachey, Deputy Northcutt, Lt. Giorgiana Bennet, Dr. French and Dr. Higgins. Desroche alleges that he was subjected to unconstitutionally improper conditions of confinement, negligent medical treatment, an invasion of his right to privacy and excessive force by a guard while incarcerated in the St. Tammy Parish Jail while he was being held as a pre-trial detainee. Record Doc. No. 1 (Complaint at attached statement pp. 1-5).  He seeks monetary relief. Record Doc. No. 1 (Complaint at p. 5).

On May 17, 2007, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Bradley Lewis, counsel for defendants.  Plaintiff was sworn and

testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

In his written submissions, plaintiff alleged that he "was forced to sleep on a concrete floor without a mattress for 10 days and was without access to clean clothing, showers, sunlight and fresh air for 9 days in a holding cell where 20 to 40 people were forced to share 1 toilet that [was] designed to flush only 3 times in twenty to thirty minutes." Record Doc. No. 1 (Complaint at attached statement p. 1).

Desroche further alleged that, after requesting to see a doctor for psychiatric medication which he had been without since his arrest, he was taken to see Dr. French, who would not give him the medication he requested and provided him instead with Paxil, a medication that Desroche had not previously taken. <u>Id.</u> at p. 2. Desroche alleged that when he later met with Dr. Higgins, a psychiatrist, Dr. Higgins told him that suddenly withholding the medication he had taken before his arrest could have lead to his death. <u>Id.</u>

Plaintiff's written submissions also alleged that he and several other pre-trial detainees "noticed Deputy Northcutt pointing his cell phone/video camera towards the prisoners in Dormitory D-800." <u>Id.</u> at p. 4. He stated that Deputy Northcutt was

2

transmitting the inmates' "live images onto the jail's computer at his post" via his cell phone. Id.

As to his excessive force claim, plaintiff alleged that on August 7, 2006, he "was pulled onto [his] back by a guard for 'yelling' at another pre-trial detainee," and that "the guard did this while [he] was in full shackles." Id. at p. 3.

During the May 17th conference, plaintiff confirmed that all of his claims arise from a time during which he was incarcerated in the St. Tammany Parish Jail prior to his conviction in August 2007 for a second, fourth-offense DWI.  Desroche said he had been arrested and brought to the St. Tammany Parish Jail on February 20, 2006.

Plaintiff confirmed that his first claim in this case is that the conditions in the holding cell where he was confined for ten days immediately after his arrest were unsanitary.  Desroche testified that he remained in the holding cell from his arrest on February 20, 2006, until he was transferred to a dormitory on March 2, 2006.  He stated that he was forced to sleep on concrete, deprived of sunlight and provided no clean water because the only available water came from a dirty sink.  Desroche stated that no shower was available on a daily basis, and he took only one or two showers during the ten days he spent in the holding tank. Plaintiff emphasized that "it's a very dirty jail," in which inmates are provided with only a blanket at night to sleep on. Desroche estimated that the holding tank was about eight feet by 15 feet in size, but not more than 10 feet by 20 feet.

3

Asked what injuries he suffered, plaintiff testified that at the end of his 10-day confinement he was hoarse, had green phlegm coming from his nose, and suffered bruises on his hips from sleeping on the floor.

Plaintiff confirmed that his second claim in this case is that he was denied adequate medical care for his psychiatric conditions, attention-deficit hyperactivity disorder[1] ("ADHD") and an anxiety disorder.  Desroche testified that he has had ADHD his entire life. He said that before his arrest he had taken Adderall for his ADHD and Inderal, Ativan, and Ambien for his anxiety disorder.  Plaintiff testified that Dr. Higgins, a psychiatrist who saw him at the St. Tammany Parish Jail, had once told him that when he was suddenly deprived of one of his previous medications, he could have died. Desroche said that he saw Dr. Higgins once, and refused to speak to him on a follow-up visit.

Plaintiff stated that Dr. French prescribed Paxil for his condition at the jail. Desroche testified that he believed Paxil is an antidepressant, and he eventually stopped taking it because he felt it was not having an effect. Desroche testified that, after he stopped taking the Paxil, he received no further medical treatment for his psychiatric

---

[1] Attention-deficit hyperactivity disorder is "a controversial childhood mental disorder with onset before age seven characterized by fidgeting and squirming, difficulty in remaining seated, easy distractability, difficulty awaiting one's turn and refraining from blurting out answers to questions before they have been completed, and inability to follow instructions, excessive talking, and other disruptive behavior." Dorland's Illustrated Medical Dictionary 492 (W.B. Saunders Company 1994).

condition. Plaintiff described his anxiety disorder by saying that the disorder makes him feel like he is going to die. Desroche alleged that Dr. French always interacted with him in an adversarial manner. When asked if his claim in this case was limited to the treatment he received for his psychiatric treatment, plaintiff answered affirmatively.

As to his third claim concerning invasion of privacy, plaintiff testified that defendant Deputy Northcutt videotaped the dormitory D-800 with a cell phone while plaintiff was there.  He speculated that the videotaping could only be done through the internet by way of a satellite link.  Desroche stated that the videotaping lasted almost 15 minutes and occurred on May 28, 2006.  He said a fellow inmate, Jermaine Burns, told him that he may have been videotaped by Deputy Northcutt. Asked what injuries he suffered as a result of the videotaping, he stated that he felt his reputation would be harmed if people saw him "in a place like that."  Desroche testified that he felt such videotaping was wrong and illegal.

Plaintiff confirmed that his final claim in this case is for excessive force against a guard whom he could not identify and who pulled him to the ground during a verbal confrontation with another pre-trial detainee on August 7, 2006.  Desroche testified that he and other inmates were located in a salley port waiting for a bus to take them to court. He said they were individually shackled, but not shackled to each other.   Plaintiff

acknowledged that he became engaged in a verbal argument with another inmate, and, in response, a guard grabbed him at the back of his collar and pulled him to the ground.

Desroche testified that the fall re-aggravated a previously injured vertebrate in his neck.  He testified that he has not had medical treatment to confirm or explain this injury. He stated that he could not remember if he saw a nurse for this injury on either of two occasions indicated in his medical records.

The medical records submitted to the court from the St. Tammany Parish Jail indicate that Desroche saw a nurse on August 9, 2006, and March 5, 2007, concerning back pain.  Record Doc. No. 22.  Although plaintiff testified that he never saw a nurse for being slapped, medical records indicate that he stated during the August 9, 2006 visit that "I was slapped."  Record Doc. No. 22.

On cross-examination, plaintiff testified that he had been charged with a second fourth-offense DWI. He also stated that he considered ADHD a psychological disorder. Desroche could not remember who first diagnosed this disorder.  He also confirmed that he took Adderall for ADHD prior to incarceration and had previously taken Ritalin for the same disorder.  Plaintiff testified that he did not know, and did not believe it was relevant, whether anyone actually viewed the video recordings allegedly taken by Deputy Northcutt with his cell phone.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

7

1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim under Section 1983 of violation of his constitutional rights under the broadest reading.

## II.   <u>CONDITIONS OF CONFINEMENT</u>

As to the conditions of his confinement in a holding cell for a 10-day period, Desroche essentially alleges that the holding tank was overcrowded, that he was deprived of a mattress, that conditions in the holding tank were generally unsanitary, that he was deprived of fresh air, that the sink providing drinking water was dirty, and that he had only limited access to a shower and toilet.

Desroche was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Id.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. On the contrary, in this case, the acts occurred while Desroche was temporarily detained in a holding cell for only ten days before his transfer to more permanent facilities in the

10

dorms.  Thus, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)), and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

Applying this standard, Desroche's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander, 351 F.3d at 630 (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." Id.

at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action. . . .   The
> "deliberate indifference" standard permits courts to separate omissions that
> "amount to an intentional choice" from those that are merely
> "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board

of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other citations omitted))

(emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511

U.S. at 838-40).

Desroche's complaint that the holding tank was overcrowded and that he had to

sleep on the floor for ten days in the crowded holding tank fails to state a constitutional

violation.   The conditions described by plaintiff, while plainly not comfortable or

pleasant, were temporary and do not rise to a level of unconstitutional overcrowding.

Wilson, 878 F.2d at 849. The crowded and uncomfortable condition that Desroche

experienced for only a short time does not result in "sufficiently serious" conditions

posing "a substantial risk of serious harm." Farmer, 511 U.S. at 834.  His transfer to the

jail's dorm space after only ten days in the holding cell negates any inference of deliberate indifference in the constitutional sense.

It also cannot be said that Desroche faced a substantial risk of serious harm in the constitutional sense from the temporary lack of a mattress for ten days.  Although the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once, and the Eighth Circuit repeatedly, has held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional.  See Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or

13

injury, was not unconstitutional).  Provision of bedding falls within those matters committed to prison administrators' sound discretion.  Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. November. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); Anela v. Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); Lareau v. Manson, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); Martino v. Carey, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions

14

violated detainees' Fourteenth Amendment rights"); Vazquez v. Gray, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); Oladipupo v. Austin, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("Oladipupo II") (citing the same cases).

Those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials.  Thus, I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the Oladipupo decisions and cases cited therein.

Desroche alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions, from being deprived of a mattress for ten days despite plaintiff's minor injuries.

Furthermore, a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)).  None of Desroche's allegations about the conditions at

the jail establish constitutional violations.  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Applying this rigorous standard, Desroche's complaint about the conditions of his confinement in the holding tank for ten days falls short of stating a constitutional violation.  Prison officials allowed Desroche access to a shower, a toilet and a sink. Plaintiff presents no testimony that the sink about which he complains was in fact unsafe or caused him to suffer disease or other serious harm.  He was exposed to these conditions for only ten days, until he was transferred to long-term holding facilities, making them at best temporary inconveniences insufficient to state a claim of constitutional dimension.

III.    MEDICAL CARE

Desroche was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in Hare in 1996, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S.

520, 539 (1979); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in</u> <u>Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.  The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Hare, 74 F.3d at 645.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  As discussed above, "[d]eliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

Thus, an inmate must satisfy two requirements to demonstrate that a prison official has violated his constitutional rights in the provision of medical care.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991);  Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

18

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998).

In the instant case, there is no indication of the implementation of "a rule or restriction" or "the existence of an identifiable intended condition or practice" of not properly treating psychiatric conditions. <u>Hare</u>, 74 F.3d at 650. Nor has Desroche established that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u>

First, Desroche's disorder does not reach the level of a serious medical condition. <u>See. e.g.</u> <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1444 (10th Cir. 1996) (broken fingers were not serious medical need when plaintiff failed to complain of injury for two days);

19

Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen, bleeding wrists from handcuffs that were too tight do not constitute serious medical need); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); Brown v. Mcgregor, No. 105-CV-0216WSD, 2006 WL 2167157, at *6 (N.D. Ga. July 31, 2006) (swollen finger, which turned out to be slight fracture of fourth distal metacarpal, was not a serious medical need when plaintiff failed to seek pain medication or further medical attention after initial examination).

Even if Desroche could prove that his condition amounted to a serious condition, he cannot establish deliberate indifference. His testimony amounts to nothing more than a disagreement with the treatment offered by two doctors at the jail.

Plaintiff states, and the medical records indicate, that Desroche did receive attention for his psychiatric disorders when Dr. French provided him with Paxil and Dr. Higgins attempted to consult with him. Desroche saw the psychiatrist, Dr. Higgins, a single time and thereafter refused to speak with him. As to Dr. French's treatment, "the decision whether to provide a certain treatment, such as Paxil, is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would

20

clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet." Gobert v. Caldwell, No. 05-30820, 2006 WL 2474846, at *2 (5th Cir. Aug. 29, 2006) (citations and internal quotations omitted). No such showing has been made on the current record.

Contentions like Desroche's amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence, but they do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Desroche fails to assert either a sufficiently severe medical condition or deliberate indifference that amounts to anything greater than mere disagreement with the medical

attention he was in fact provided.  Accordingly, plaintiff has failed to assert a violation of his constitutional rights.

## IV.   VIDEOTAPING / PRIVACY

My research has located no court decisions specifically addressing alleged videotaping of a prisoner with a cell phone. In the First Amendment context, the Supreme Court in dicta has stated that though "inmates lose many rights when they are lawfully confined," they "retain certain fundamental rights of privacy; they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters." Houchins v. KQED, Inc., 438 U.S. 1, 5 n. 2, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (emphasis added).  This Houchins case, however, dealt with media rights of access to prisoners, rather than prisoner surveillance by jail officials, as alleged by Desroche in this case.  Id. at 5.  In another context, the Court has declared that a prison inmate retains only those rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  In analyzing the privacy interests of prisoners themselves, the Ninth Circuit stated: "The prisoners' [privacy] claims are best supported analytically under the fourth amendment's guarantee of one's legitimate expectation of privacy against unreasonable searches and seizures . . . and under the liberty component

22

of the fourteenth amendment." Grummett v. Rushen, 779 F.2d 491, 493 n.1 (9th Cir. 1985) (emphasis added).

In a case involving photographs of prisoners taken by law enforcement agents, the Tenth Circuit has held that a prisoner's rights are "not violated unless (a) he had a legitimate expectation of privacy in the photos, and (b) his privacy interest outweighed the public need for their disclosure." Slayton v. Willingham, 726 F.2d 631, 635 (10th Cir. 1984). Despite the limited protection some courts have recognized for videotaped images of a prisoner, "speculative fear that . . . privacy rights will be injured if [a] videotape is shown in the future . . . is not a 'real and immediate' injury redressable by a federal court." Scott v. Gier, 1994 WL 283621 at *1 (9th Cir. 1994). The plaintiff must show that "the videotape would likely cause . . . substantial and immediate injury to a legally-protected interest." Id. at *2.

Applying these broad principles, and in the absence of Fifth Circuit case law on prison privacy as to visual images, I find that Desroche has failed to describe circumstances that would constitute a violation of any constitutionally recognized privacy rights. Deputy Northcutt's alleged recording of inmates with his cell phone, even if in poor taste, does not amount to a constitutional violation of any recognized right to privacy Desroche may have had in jail. Two key elements bar Desroche from succeeding on his claim of a constitutional violation of any right to privacy.

23

First, plaintiff had no expectation of privacy while he stood in a public area in jail before Deputy Northcutt.  There is little meaningful difference between Deputy Northcutt observing Desroche and his alleged videotaping of Desroche in a dormitory area, since Desroche had no expectation that he would not be viewed by his jailers in the prison dormitory.

Second, Desroche does not assert that the video caused him either "real and immediate" or "substantial and immediate" harm.  See Scott v. Gier, 1994 WL 283621 at *1-2.  Desroche testified that his reputation was injured by his exposure on video to the fact that he was in jail.  Obviously, by his arrest, he was already publicly known to be in jail.  Any possible harm to Desroche's reputation, such as it is in light of his multiple DWI convictions, is so speculative as to be non-existent.  He asserts that only one known person, another inmate, actually viewed the video. Absent some greater showing of both an expectation of privacy and actual harm to his reputation, Desroche's claim must fail.

Finally, plaintiff's claim is also deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for compensatory damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

24

injury while in custody without a prior showing of physical injury." (Emphasis added).

Desroche does not allege any specific "injuries" in this case but complains of damage to

his reputation.

In several recent decisions, the Fifth Circuit has enforced the statutory physical

injury requirement for prisoners who seek damages for intangible emotional or

psychological harm, such as has been alleged by Desroche. Harrison v. Smith, No.

03-40924, 2003 WL 22946387, at *1 (5th Cir. Dec. 11, 2003); Criollo v. Wilson, No.

02-21124, 2003 WL 22295491, at *1 (5th Cir. Oct. 7, 2003); Atkinson v. Johnson, 2003

WL 22012901, at *1 (5th Cir. Aug. 26, 2003); Herman v. Holiday, 238 F.3d 660, 665

(5th Cir. 2001).

In this case, no physical injuries nor actual harm of any kind have been alleged by

Desroche as a result of his being videotaped. As Section 1997e(e) provides and Fifth

Circuit case law makes clear, Desroche is precluded as a matter of law from recovering

damages for the minimal psychological or other emotional injury he has asserted. Thus,

his complaint must be dismissed in this regard.

V.    EXCESSIVE FORCE

Desroche was a pretrial detainee at the time he was pulled to the ground from

behind by an officer after becoming involved in an argument with another inmate. Thus,

his claim that officers used excessive force against him is properly characterized as

25

asserting a violation of his substantive due process rights under the Fourteenth Amendment. Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citation omitted). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the . . . substantive due process approach." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

To the extent the Eighth Amendment standard applies, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm."  <u>Hudson</u>, 503 U.S.

at 6; <u>accord</u> <u>Petta</u>, 143 F.3d at 901; <u>Flowers v. Phelps</u>, 956 F.2d 488, 491 (5th Cir. 1992).

Plaintiff need not show a significant injury to establish a constitutional violation;

however, the extent of the injury may be considered in determining whether the force

used was malicious, wanton or unnecessary.  <u>Hudson</u>, 503 U.S. at 7; <u>Flowers</u>, 956 F.2d

at 491.   In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual

punishment excludes from constitutional recognition de minimis uses of physical force,

provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

<u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997) (quoting <u>Hudson</u>, 503 U.S. at 9-

10).

The law "require[s] a plaintiff asserting an excessive force claim to have suffered

at least some form of injury, . . . we do not permit a cause of action for every contact

between a citizen and a police officer.  In just about every conceivable situation, some

amount of force or contact would be too nominal to constitute a constitutional violation.

When the force used is insufficient to satisfy the legal standard necessary for recovery,

the amount of force is de minimis for constitutional purposes."  <u>Williams v. Bramer</u>, 180

F.3d 699, 703 (5th Cir. 1999) (quotation omitted).  To determine whether injury caused

by excessive force is more than de minimis for constitutional purposes, the context in

which the force was used and all the surrounding circumstances must be examined.  <u>Id.</u>

Weighing the foregoing factors in this instance, Desroche's claim of excessive force must fail.  Plaintiff admits that he was engaged in a verbal argument with another inmate while a number of inmates were being moved from one location to another at the time the unknown officer pulled him by the collar to the ground. Desroche's argument with another inmate in this setting created an obvious security risk and threat to order that required a response.  Applying the factors from <u>Petta</u>, it is clear that the officer applied an amount of force that was necessary and reasonable for the purpose of stopping the verbal altercation. Desroche suffered only minor injuries as a result of this action. The officer did not apply force that caused significant injuries, and he applied it while Desroche was engaged in disorderly conduct. Under these circumstances, the unknown officer applied force that fell well short of malicious or wanton conduct, and he did so proportionally to the need for force to stop the arguing inmates and restore order and discipline.  Plaintiff's claim does not show the magnitude or aberrant nature of excessive force necessary to meet the constitutional standard.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

28

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __29th__ day of June, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE